# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TRAVIS CASEY | § | |
|     Plaintiff | § | |
| | § | |
| v. | § | |
| | § | A-09-CA-337 SS |
| OFFICER DAVID RODRIGUEZ and | § | |
| THE CITY OF AUSTIN | § | |
|     Defendants | § | |

## AFFIDAVIT OF DAVID CHARLES BECKER

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

BEFORE ME, the undersigned Notary Public, on this day appeared DAVID CHARLES BECKER, who, being by me first duly sworn, stated as follows:

1. "My name is David Charles Becker I am over the age of eighteen years and I am competent to make this affidavit. I have never been convicted of a felony or any crime involving moral turpitude.

2. I have been a Patrol Officer in the Austin Police Department ("APD") since January 2009, and have been employed by the City of Austin since September 1999.

3. I am an Anglo male, and in 2007 I was 48 years old, 6'1", 200 pounds with a mustache.

4. I have read Plaintiff's First Amended Complaints and am familiar with the allegations therein. On April 30, 2007, I was a Sergeant for the Park Unit of the Public Safety and Emergency Management ("PSEM") Department of the City of Austin, which merged into APD in January 2009.

The Park Unit oversees all water ways owned by the City of Austin, and 272 park lands where it is responsible for breaches of the peace and enforcement of laws.

5.   Austin Park Police continuously monitored all municipal parks, and conduct sting operations as needed. City parks have signs posting the hours the park is open, and Walnut Creek Park has a sign warning that undercover police officers may be in the park. Park Police monitored internet sites soliciting park visitors for illicit purposes, so we knew who and what to look for, like men trying too hard to encounter and make eye contact with other men during the day, or three puffs on a cigarette at night was a common signal between men who had sex in the parks.

6.   In 2007, the City of Austin was receiving increasing complaints (1) from citizens by telephone, (2) in person when stopped by citizens in the park complaining, and (3) from park officers about children finding condoms and seeing men having sex in cars and restrooms at Walnut Creek Park in Northeast Austin.

7.   In response to these complaints, PSEM planned to conduct a public lewdness sting. I had participated in other undercover operations at City parks, and had made public lewdness arrests before. I briefed members of the operation on the specific plan at 5:00 a.m. at headquarters, and assignments were made to team members.

| | |
|---|---|
| Close Cover Unit (plain clothes) | Sgts. Becker, Chalfoun |
| Bait Unit (plain clothes) | Ofcrs. Rodriguez, Corpus |
| Take Down Bike Unit (plain clothes) | Ofcrs. Gannon, Labadens, Aguilar |
| Transport Unit (uniforms/patrol cars) | Ofcrs. Cruz, Dale, Wooldridge |

8.   The Close Cover, Bait, and Take Down Units wore badges and ID hidden from view and took positions in the park. Take Down officers arrived in a bike truck. Bait Officers arrived with Sgt. Chalfoun and me in an SUV, and parked in a parking lot with a view of the restrooms next to the baseball field. From this vantage point, as Sergeants we could coordinate all units, and maintain

surveillance on the Bait Officers who would take positions at the restrooms. The Transport Units took positions nearby in marked patrol cars.

9. The Ops Plan I distributed to the team specified that officers were not to pursue anyone out of the park unless officers or civilians were injured, or we had something more than just public lewdness. Without that, we would get warrants based on suspect and vehicle descriptions.

10. Officer David Rodriguez was partnered with Officer Frank Corpus who had participated in undercover park operations, and had experience in public lewdness stings. As Bait Officers, Ofcrs. Rodriguez and Corpus wore plain clothes, walkie-talkie, cell phone, badges, and weapons hidden from view. They walked from the parked SUV, and took positions at the restrooms.

11. Sgt. Chalfoun and I observed a male subject park his vehicle and take a trail towards the woods. We were unable to get Ofcrs. Rodriguez and Corpus on the air to advise, so I left Sgt. Chalfoun in the SUV to try to radio while I followed to ensure the subject did not come upon any sting officers without warning.

12. I followed the same trail as the subject knowing men had sex in the wooded area. I encountered the subject, he made eye contact, there was a brief verbal exchange, and I asked the subject his name. He responded with "Travis." The subject exposed his genitals while performing a sexual act and grabbed my genitals. I identified myself as "Police," and told the subject he was under arrest. The subject responded, "Hell no, I'm not going to jail," shoved me down onto a fallen tree, and ran through the woods. I only sustained minor injuries so I made chase, but lost visual in the darkness of the woods at that hour on an overcast day.

13. I updated Sgt. Chalfoun via cell phone to radio all units. The units searched for almost an hour, but did not catch the subject who must have really known his way around the park.

3

14. The morning rain became a heavy downpour and officers were soaked and cold, so around 8 a.m., I suspended the operation and we met nearby for breakfast and briefing on the indecent exposure, public lewdness and assault.

15. Under the Texas Penal Code, indecent exposure and public lewdness are both misdemeanor offenses. Because the suspect had exposed his genitals and made contact with mine, there was probable cause to arrest for these offenses. There was also probable cause to arrest for assault on a peace office, a first degree felony, when he pushed me down.

16. I gave a description of a tan Mercury Sable, and a tall white male, over six feet, mid 30's, over 200 pounds, red t-shirt, orange shorts, white sneakers, who identified himself as "Travis." The rain lifted, some officers changed into dry clothes, and the operation resumed at the park at about 9 a.m.

17. I again parked the SUV to maintain surveillance on Ofcrs. Rodriguez and Corpus who again walked in the direction of the restrooms. Sgt. Chalfoun and I soon observed the suspect who assaulted me walking toward a parked tan Mercury Sable near the restrooms, so we drove toward the vehicle knowing our officers were headed in that direction. As we did so, our view was obstructed by trees for only a second when we heard shots fired.

18. Even though we only lost visual for a second, when the incident was back in view the shooting was over and I could see our officers standing behind the vehicle which was fleeing in the direction of the exit. I could not see the driver upright in the driver's seat, and I feared he was mortally wounded or dead. I did not know exactly what had happened because I did not witness the shooting itself since it happened in a second when our view was blocked by trees. Believing our officers were okay because they were standing behind the vehicle, I decided to follow to determine if the driver which we could not see was a threat to himself or others.

19. Transport Officers had moved into position to block the park exits upon shots being fired. The vehicle was speeding out of the park and nearly T-boned Ofcrs. Cruz and Dale who were blocking the north park exit. If they hadn't gone out of his way, he would have slammed into them at that speed. We continued to follow to the suspect to maintain visual and radio, while the marked patrol cars initiated pursuit.

20. The suspect escaped via the park exit, and turned right. I pursued with Ofcr. Cruz following, lights and sirens activated. The suspect ran the stop sign onto Parmer Ln. and turned right. At such a high rate of speed, the suspect lost control of his car and spun 360° at the next intersection turning right onto Lamar Blvd. nearly hitting a sedan, then took the next left.

21. As soon as Ofcrs. Cruz and Dale caught up to the suspect, I dropped back and let them take the lead. The suspect hit a dead end at construction barricades, and was forced to stop after leading two patrol cars running lights and sirens in a mile and a half chase through traffic.

22. The suspect hit a dead end and had to stop for the patrol car.

23. I am very familiar with the woods where I the suspect assaulted me and have found numerous used condoms in that area. There are also lots of briar vines in that area which would leave scratches on anyone wearing shorts.

24. Policies and procedures direct officers to only use the level of force that is reasonably necessary to bring an incident under control while protecting the lives of the officer or another, as set forth in PSEM B101 "Use of Force." I heard shots fired, but Ofcr. Rodriguez was not firing or aiming at the fleeing vehicle when the incident came into my view once the vehicle passed him.

25. Attached are true and correct copies of a photograph of me taken that day after the incident, and PSEM and Park Police policies and procedures on use of force.

26. I have read the foregoing affidavit, I have personal knowledge of the facts stated therein, and they are true and correct."

SIGNED this 10th day of January, 2011.

*[signature]*
DAVID CHARLES BECKER

SUBSCRIBED AND SWORN TO BEFORE ME on this 10th day of January, 2011, to certify which witness my hand and official seal.

*[Notary seal: Margaret Evins, Notary Public, State of Texas, My Commission Expires March 30, 2012]*

*[signature]*
NOTARY PUBLIC - STATE OF TEXAS





Scratches and abrasions to sgt becker from assault

