IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2011 FEB -9 PM 1:34
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

TRAVIS CASEY,
    Plaintiff

-vs-

OFFICER DAVID RODRIGUEZ and THE CITY OF AUSTIN,
    Defendants

Case No. A-09-CA-337-SS

## ORDER

Before the Court is Defendants' Motion for Summary Judgment, filed January 14, 2011 [#55]. Having considered the motion, the case file as a whole and the applicable law, the Court enters the following opinion and orders.

### I. Background

Plaintiff Travis Casey ("Casey") filed this action against Defendants Austin Police Officer David Rodriguez ("Rodriguez") and the City of Austin. Casey alleges on the morning of April 30, 2007 he had been hiking in the Walnut Creek Metropolitan Park ("WCMP"). He was crossing the parking lot toward his car at approximately 9:00 a.m. when he saw two individuals he describes as looking "like hippies." (Plf. 1st Am. Compl. ¶¶ 7-9).

Plaintiff further alleges the individuals starting running at him, behaving aggressively and yelling at him to stop. According to Casey, the two individuals did not identify themselves. Fearful, Plaintiff got in his car and locked the door. (*Id.* ¶¶ 10-13)

Casey alleges one of the individuals ran to the driver's side window of his car and struck the window with his fist. The other individual, later identified as Officer David Rodriguez ("Rodriguez"), positioned himself in front of Casey's car and pointed a handgun at Casey through the windshield. According to Plaintiff, fearing for his life, he backed his car up until he was facing the park exit. However, Rodriguez repositioned himself in front of the car, and continued to point

his gun at Casey without identifying himself as a police officer. Casey alleges, despite his plea, Rodriguez fired multiple shots, one of which struck him. Plaintiff then drove away as quickly as he could. Upon hearing police sirens he pulled over. Rather than take him directly to the hospital, the police placed him under arrest. (*Id.* ¶¶ 14-23)

Plaintiff asserts claims under 42 U.S.C. § 1983 against both Rodriguez and the City of Austin. Specifically, he alleges Rodriguez violated his constitutional rights by using excessive force against him and the City of Austin has engaged in a pattern or practice of such conduct by its law enforcement personnel and has failed to train, investigate and discipline its officers. Casey also asserts a state law claim of assault against Rodriguez.

Defendants filed a motion for summary judgment on January 14, 2011. They contend: (1) there was no violation of Plaintiff's constitutional rights; (2) Rodriguez is entitled to qualified immunity; (3) Plaintiff has failed to present facts sufficient to establish municipal liability against the City of Austin; and (4) Plaintiff's claim for state law assault fails. To date, Plaintiff has not filed a response. The matters are now ripe for determination.

## II. STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S. Ct. 2505, 2513 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

317, 323, 106 S. Ct. 2548, 2553 (1986). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-87, 106 S. Ct. 1348, 1355-56 (1986); *Wise v. E.I. Dupont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir. 1995). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir. 1992).

The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters,* 5 F.3d 110, 122 (1993). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Mississippi River Basin Alliance v. Westphal,* 230 F.3d 170, 174 (5th Cir. 2000). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Id.*

### III. SUMMARY JUDGMENT EVIDENCE[1]

In 2007, the City of Austin was receiving increasing complaints about children finding condoms and seeing men having sex in cars and restrooms at WCMP. (Def. Mot. for Summ. Jt. Ex. 3 ("Becker Aff.") ¶ 6). In response to the complaints, the park police planned to conduct a public lewdness sting. The sting involved seven plain clothes officers, including Sergeant David Charles Becker ("Becker"), and Officers Rodriguez and Frank Corpus ("Corpus"). (*Id.* ¶ 7; Def. Mot. for Summ. Jt. Ex. 4 ("Rodriguez Aff.") ¶¶ 4-6; Ex. 5 ("Corpus Aff.") ¶¶ 5-6).

---

[1] As noted above, Plaintiff has not responded to the motion for summary judgment. Thus, any evidence presented by Defendants in support of their motion for summary judgment would be uncontroverted, undisputed and presumably sufficient to entitle them to summary judgment. *See Bookman v. Shubzda,* 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (where plaintiff fails to respond to summary judgment motion, court may accept defendants' evidence as undisputed). However, Defendants attached Plaintiff's deposition as an exhibit to their motion, testimonial evidence which is clearly admissible and must be viewed in the light most favorable to Plaintiff. As detailed below, in that deposition Plaintiff presents a version of the facts, which if believed by a jury, would be sufficient to support a verdict in his favor.

During the sting operation, Becker saw a male subject park his vehicle and take a trail into the woods. In his affidavit Becker states:

> I followed the same trail as the subject knowing men had sex in the wooded area. I encountered the subject, he made eye contact, there was a brief verbal exchange, and I asked the subject his name. He responded with "Travis." The subject exposed his genitals while performing a sexual act and grabbed my genitals. I identified myself as "Police," and told the subject he was under arrest. The subject responded, "Hell no, I'm not going to jail," shoved me down onto a fallen tree, and ran through the woods. I only sustained minor injuries so I made chase, but lost visual in the darkness of the woods at that hour on an overcast day.

(*Id.* ¶ 12).

After searching WCMP, Becker suspended the sting operation and the officers met for breakfast and a briefing on the incident. (Becker Aff. ¶ 14). Becker gave a description of a tan Mercury Sable, and a tall white male, over six feet, mid-30's, over 200 pounds, red t-shirt, orange shorts and white sneakers, who identified himself as "Travis." The officers returned to WCMP approximately one hour later. (Becker. Aff. ¶¶ 16-17; Rodriguez Aff. ¶¶ 8-9; Corpus Aff. ¶¶ 9-10).

Rodriguez and Corpus almost immediately spotted a suspect matching the description Becker gave them of "Travis." According to the officers, as they began walking in the direction of the parking lot, the suspect spotted them and began running toward his car. Rodriguez pulled his badge, which he was wearing on a chain around his neck, out from under his shirt so it was plainly visible. Corpus also moved his shirt to display his badge. The officers began yelling "Police, Stop" but the suspect jumped in his car and locked the door. (Rodriguez Aff. ¶¶ 9-10; Corpus Aff. ¶¶ 10-11).

Rodriguez and Corpus again yelled "Stop, Police Officers, step out of the vehicle and show us your hands." Both officers were concerned the suspect might have a weapon in his vehicle. The suspect ignored them, and shouted an obscenity. Corpus pounded on the driver's side window of the vehicle as he yelled. Rodriguez continued to yell instructions from in front of the vehicle. (Rodriguez Aff. ¶¶ 11-12; Corpus Aff. ¶¶ 12-13).

The suspect then started the ignition of his vehicle. Concerned for his safety, Rodriguez moved to the left of the vehicle. (Rodriguez Aff. ¶¶ 12-13). According to Corpus, the suspect put the car in reverse and floored it. Corpus states "I dove out of the way and curled up to avoid being run over and killed. If I had not done so, I would surely have been struck by the left tire and fender." (Corpus Aff. ¶ 14).

According to Rodriguez, however, he could no longer see Corpus and feared the suspect had run Corpus over. The suspect then turned the steering wheel, put the vehicle in drive and floored it, driving toward Rodriguez. In his affidavit Rodriguez states:

> I opened fire as I tried to get out of the direct path of the vehicle with the good faith belief that he was trying to kill me to evade arrest again. I managed to avoid being hit by stepping to the right side while continuing to fire, but the suspect refused to stop and instead sped away. I knew I had to fire because the car could quickly swerve and hit me if I just moved to the side without firing. The driver's side window shattered, but still the suspect would not stop.
>
> As soon as the car passed me and the threat was over, I stopped firing. With the adrenaline running from having just escaped being run over, at the time I was not sure how many shots I fired. I now know that my Glock had sixteen (16) rounds, but I only fired seven (7). . . .
>
> I was not standing in front of the vehicle when I opened fire because he reversed and turned the wheel toward me. I would not put myself at risk standing in front of a two-ton machine I know could run over me. If I had just tripped, I would have been hit, run over and would likely be dead.

(Rodriguez Aff. ¶¶ 17-19) (paragraph numbers omitted).

The suspect drove his vehicle out the park exit, nearly hitting a parked police car. Officers pursued with lights and sirens activated. The suspect ran a stop sign and turned right. Due to his high rate of speed, the vehicle spun and nearly hit another car. The suspect was forced to stop at construction barricades. (Becker Aff. ¶¶ 19-22).

Plaintiff's version of the facts varies in signficant details. He testified he drove to WCMP at approximately 5:30 a.m. on April 30, 2007. He stated he often went to the park to enjoy the trails and other amenities, and went on that occasion to get some fresh air because he was having

5

difficulty sleeping. (Def. Mot. for Summ Jt. Ex. 1 ("Casey Depo.") at 45-49, 89). Upon returning to his vehicle, he saw two men walking toward him yelling "Hey you. Hey stop." Casey said it did not seem like a safe situation, so he got into his car and locked the door. One of the men came to the side of his car, the other stood in front of his car and pointed a gun at him. Casey testified he did not see any badge identifying the men as police officers. (*Id.* at 40, 85-86, 91, 103-04).

Casey testified he put his car in reverse and slowly began backing out. He then turned the car to the left so it was facing the exit. Casey stopped the car, put his hands up and said "Please, don't shoot me." According to Casey, "[t]he officer began shooting at my car parked until he got around to the 9:00 o'clock position and shot me through the driver-side window of my car." Casey then reached across the steering wheel with his uninjured hand, put his car in drive and drove to the exit of the park. He pulled over and stopped when he heard the sirens and saw the police car behind him. (*Id.* at 86-88). Following the incident, Plaintiff required surgery for his gunshot wound. He also had injuries he attributes to the breaking of the glass of the car window. (*Id.* at 61-63; 73).

## IV. ANALYSIS

### A.  Officer Rodriguez

Defendants have moved for summary judgment as to Casey's civil rights claim against Rodriguez on two bases. First, they contend Plaintiff's claim of excessive use of force does not rise to the level of a constitutional violation. They also maintain Rodriguez is entitled to qualified immunity. As set forth below, the first prong in evaluating a defense of qualified immunity is to determine whether there is an actionable constitutional violation. Thus, the Court will address both arguments jointly.

Law enforcement officials are immune from suit for discretionary acts performed in good faith while acting within the scope of their authority unless their conduct violates a "clearly established statutory or constitutional right of which a reasonable person would have known."

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). This requires a two-part analysis. First, the court must determine "whether the plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 122 S. Ct. 2508, 2513 (2002); *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). If not, the official is entitled to qualified immunity, and the court need not continue to the second step of the analysis. *Chavez v. Martinez*, 538 U.S. 760, 766, 123 S. Ct. 1994, 2000 (2003). If the plaintiff sufficiently alleges the violation of a constitutional right, the court must decide whether that right was clearly established at the time of the alleged violation and whether the conduct of the officer was objectively unreasonable under the circumstances. *Siegert v. Gilley*, 500 U.S. 226, 231-33, 111 S. Ct. 1789, 1793 (1991). The Supreme Court has recently made clear the two-step inquiry may be addressed in either order at the court's discretion. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009).

A claim of excessive force during arrest must be analyzed under the "reasonableness" standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871 (1989); *Ikerd v. Blair*, 101 F.3d 430, 433 (5th Cir. 1996). The Fifth Circuit has adopted a three-part test in such cases. The plaintiff must show: (1) he or she suffered some injury; (2) resulting from force that was clearly excessive to the need for force; and (3) the force used was objectively unreasonable. *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005); *Heitschmidt v. City of Houston*, 161 F.3d 834, 838 (5th Cir. 1998). The Court must view the totality of circumstances from the standpoint of a reasonable officer on the scene, paying particular attention to "whether the suspect pose[d] an immediate threat to the safety of the officers or others." *Stroik v. Ponseti*, 35 F.3d 155, 157-58 (5th Cir. 1994). *See also Gutierrez v. City of San Antonio*, 139 F.3d 441, 447 (5th Cir. 1998) (court must consider severity of crime at issue, whether suspect posed immediate threat to officer or others, and whether suspect was actively resisting arrest or attempting to evade arrest by flight).

In their motion for summary judgment, Defendants argue Plaintiff cannot establish a constitutional violation because the "objective evidence is irrefutable" and contradicts Casey's version of the events. (Def. Mot. for Summ. Jt. at 8). Specifically, they cite: (1) statements made by Casey immediately after the incident in which he appears to concede he was aware Rodriguez and Corpus were police officers; (2) photographic evidence which contradicts his claim that he did not encounter Becker in the WCMP; (3) photographic evidence which establishes he was scratched while running through the woods to escape Becker; and (4) ballistics evidence which establishes Casey's car was moving toward Rodriguez when the shots were fired and establishes Casey's hands were not in the air when he was shot.[2]

Defendants' argument is unavailing for two reasons. First, and foremost, the argument essentially urges the Court to disregard Casey's testimony because it is refuted by other evidence. However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513.

Second, the objective evidence Defendants characterize as irrefutable falls short of that mark on the issues relevant to the determination of the summary judgment motion. The evidence they cite refuting Plaintiff's testimony that he was unaware Rodriguez and Corpus were police officers, that he did not encounter Becker and that scratches on his body were the result of glass cuts is not relevant to the core issue of the reasonableness of Rodriguez in firing shots at Casey. Assuming Casey was aware Rodriguez and Corpus were police officers who had reasonable cause

---

[2] Defendants also suggest Plaintiff's version of the facts differed at the time of his arrest, during an interview in the hospital approximately one hour later and at his deposition. Defendants do not, however, cite any specific instance in which Plaintiff contradicted the relevant portion of his testimony. That is, they do not cite any statement by Casey admitting he did not stop the car, raise his hands and ask Rodriguez not to shoot.

to arrest him based on his conduct with Becker, Defendants must still point to undisputed evidence supporting the use of deadly force against Casey.

Use of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others. *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S. Ct. 1694, 1701 (1985); *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003). The Court is aware that the use of force must be assessed through the lens of the officers' reasonable assessment of the situation at the time, not "the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396, 109 S. Ct. at 1872. The Court is also fully aware that the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id.* at 396-97, 109 S. Ct. at 1872.

Nonetheless, when viewed in the light most favorable to Plaintiff, the evidence shows Casey ran to his car and locked the door. The evidence also shows, at that point, Rodriguez was in front of the car and Corpus was hitting the driver's side window. Casey testified he put his car in reverse and slowly began backing out. He then stopped the car, put his hands up and said "Please, don't shoot me." According to Casey, Rodriguez then began shooting, working his way from the front of the car to the "9:00 o'clock position" and shot Casey through the driver's side window.

Defendants argue Rodriguez was justified in shooting at Casey because he reasonably was concerned for his safety as he believed Casey had likely injured Corpus when backing up. They maintain the objective "forensic evidence establishes that: (1) the car was accelerating toward Ofcr. Rodriguez while he fired based on the bullet trajectories in the hood, (2) Plaintiff could not have his hands in the air based on the bullet defects not striking above the hood, and (3) Plaintiff could not have his hands in the air based on the bullet passing through his forearm and landing in the steering wheel air bag." (Def. Mot. for Summ. Jt. at 8).

9

The forensic evidence cited is a multi-page report detailing the trajectories of the bullets fired, with explanatory diagrams and supporting photographs. The report establishes the shots were fired from a range of positions beginning directly in front of Casey's car, in a quarter circle finishing at the driver's side of the car. (*Id.* Ex. 8).[3] Although Defendants conclude the evidence establishes Casey's car was moving, the evidence may equally be viewed as establishing Rodriguez was moving as he fired. In addition, the bullets hitting the hood could establish Rodriguez was aiming low because Plaintiff had his hands on the wheel of the car, but could also establish Rodriguez was a poor shot. Similarly, the trajectory of the bullet passing through Plaintiff's arm and landing in the steering wheel could establish Plaintiff's hand was on the wheel of the car, not in the air. However, it does not contradict Plaintiff's statement that he originally had his hands in the air, as he could easily have moved them once Rodriguez started shooting. In short, the forensic evidence does not irrefutably rebut Plaintiff's testimony. The Court finds a jury could conclude based on the summary judgment evidence, that Rodriguez could not reasonably believe Casey posed a serious threat of harm to him or to Corpus at the time Rodriguez began firing at Casey. Accordingly, the motion for summary judgment on this basis is denied.

**B.    City of Austin**

Defendants also contend Plaintiff has failed to establish an actionable claim against the City of Austin. They first argue the City of Austin is not liable because no constitutional right was violated. "Without an underlying constitutional violation, an essential element of municipal liability is missing." *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997). *See also City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 1573 (1986) ("it is inconceivable that" municipality sued based on actions of employee could be liable if employee inflicted no constitutional injury).

---

[3] Defendants also cite Exhibit 12 to their summary judgment evidence. However, that exhibit is a transcript of an interview of Casey shortly after the incident and photographs of his injuries. The exhibit in no way addresses the trajectories of the bullets shot or the conclusions to be drawn therefrom.

However, as set forth above, the Court has rejected the Defendants' contention that no constitutional injury has been established by Plaintiff. Accordingly, the City of Austin is not entitled to summary judgment on this basis.

Defendant also contend Plaintiff has not shown any policy was the cause of their injury. A governmental entity is liable under 42 U.S.C. § 1983 if its official policy or custom causes a person to be deprived of a federally protected right. *Board of County Comm'rs v. Brown,* 520 U.S. 397, 403, 117 S. Ct. 1382, 1388 (1997); *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978). Official policy includes policy statements, ordinances or regulations which are officially adopted by municipal authorities, while a custom is a persistent, widespread practice of employees which is within the actual or constructive knowledge of the governing body of the municipality. *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir. 1984); *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir. 1984). To impose liability, a plaintiff must identify the policy, connect the policy to the governmental entity itself and show his injury was incurred because of the application of the specific policy identified. *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001); *Bennett,* 728 F.2d at 767.

Defendants have presented summary judgment evidence by way of affidavit testimony from the Director of Public Safety for the City of Austin in 2007, Becker, Rodriguez and Corpus establishing the policy of the City of Austin in 2007 authorized the use of deadly force by an officer only when the officer reasonably believed another person posed a threat of death or serious physical harm to the officer or another. (Def. Mot. for Summ. Jt. Ex. 2 ¶ 11; Becker Aff. ¶ 24; Rodriguez Aff. ¶ 24; Corpus Aff. ¶ 23). Defendants have also provided a copy of the use of force policy itself which states in pertinent part "Deadly force may only be used when the officer has a reasonable belief that another person poses a threat of death or serious physical harm either to the officer or another." (Def. Mot. for Summ. Jt. Ex. 15 at 1). This evidence is unrefuted. Plaintiff's failure to present any controverting evidence dooms his claim against the City of Austin.

Accordingly, the City of Austin is entitled to summary judgment as to all claims raised by Plaintiff against it.

**C.     State Law Claim**

Defendants finally summarily suggest Plaintiff's state law claim should be dismissed because governmental immunity is not waived for intentional torts. The doctrine of sovereign immunity "bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). *See also Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363, 121 S. Ct. 955, 962 (2001) ("ultimate guarantee" of Eleventh Amendment is nonconsenting States may not be sued by private individuals in federal court); *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73, 120 S. Ct. 631, 640 (2000) ("for over a century now, we have made clear that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States").

Defendants admit the state statute known as the Texas Tort Claims Act ("TTCA") provides a limited waiver of sovereign immunity for certain common law torts such as negligence where the use of personal property caused the injury. *See* TEX. CIV. PRAC. & REM. CODE § 101.021 (Vernon 2005) (permitting liability against governmental unit in the state for personal injury and death caused by condition or use of tangible personal property). However, Defendants maintain the waiver does not apply to Plaintiff's claims because the statute completely excludes claims for intentional torts such as assault. *See* TEX. CIV. PRAC. & REM. CODE § 101.057(2) (statutory waiver of sovereign immunity does not apply to claim arising out of assault).

Defendants' reliance on the language of the TTCA is completely misplaced in this case. As Plaintiff's complaint makes clear, he asserts his common law tort claim solely against Rodriguez in his individual capacity. Sovereign immunity and the TTCA are thus not implicated. *See*

*Goodman v. Harris County*, 571 F.3d 388, 394 (5th Cir. 2009) (individuals may not be sued under TTCA as act does not govern suits brought directly against employee of governmental unit); *Jackson v. Stinnett*, 881 S.W.2d 498, 500 (Tex. App.–El Paso 1994, no writ) (sovereign immunity does not apply to suits against individuals). See also *Kentucky v. Graham*, 473 U.S. 159, 167-68, 105 S. Ct. 3099, 3106 ("A victory in a personal-capacity action is a victory against the individual defendant, rather than against the entity that employs him"); *New Orleans Towing Ass'n v. Foster*, 248 F.3d 1143, 2001 WL 185033, at *6 (5th Cir. 2001) (relief sought against defendants in their individual capacities does not operate against state). Thus, Defendants are not entitled to summary judgment on Plaintiff's state law claim.

In accordance with the foregoing:

IT IS ORDERED that Defendants' Motion for Summary Judgment [#55] is GRANTED IN PART and DENIED IN PART;

IT IS FURTHER ORDERED THAT Defendants' motion is DENIED with respect to Plaintiff's claim against Defendant David Rodriguez in his individual capacity under 42 U.S.C. § 1983 for the use of excessive force and state tort law claim for assault;

IT IS FURTHER ORDERED THAT Defendants' motion is GRANTED with respect to all claims against Defendant the City of Austin.

SIGNED this the 8th day of February 2011.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE